U. S. GRANT UNIVERSITY, Appellant, vs. BENTLEY, Executor, Respondent.

*February 25—March 21, 1903.*

*Contracts: Endowment of professorship: Conditions precedent: "Naming" chair in university: Failure of consideration.*

A proposition or promise to endow a professorship in a university was contained in a writing as follows: "The Rev. John Bean chair and Carolina Fruit scholarship in G. university, said chair to be named and said scholarship to be awarded at once on condition of donor paying $1,000 in cash or real estate and providing by will for payment, at decease of donor, of $5,000. And after" certain sums for benevolent purposes stated, "amounts shall be applied to the Rev. John Bean chair until the total contributed by donor shall reach $10,000." The donor made a will accordingly and conveyed real estate to the university to the amount of $1,000. The trustees of the university formally accepted the gift and formally named a chair or professorship the "Rev. John Bean Chair," but made the actual establishment of such professorship to depend upon the raising

of additional funds for its endowment, and in fact there never existed any such professorship except in name. The donor afterwards revoked said will. *Held*, that there had been no compliance with the condition of the donor's promise, and such promise therefore never became a binding contract. .

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

In 1887 an educational corporation known as the Grant Memorial University was located at Athens, Tenn., where it conducted an institution of learning. In March of that year one J. J. Garvin visited Mrs. Caroline C. Fruit at her home in Baraboo, Wisconsin, and there solicited her to aid in establishing a chair of practical theology in said institution, with the result that she signed a paper which was in the words and figures following:

"The Rev. John Bean chair and Carolina Fruit scholarship in Grant Memorial University at Athens, Tenn., said chair to be named and said scholarship to be awarded at once on condition of donor paying one thousand dollars ($1,000.00) in cash or real estate, and providing by will for the payment, at decease of donor, of five thousand dollars ($5,000.00). And after the following named benevolences of the M. E. church have received as follows:

| | |
|---|---|
| The Church Extension Society | $500 00 |
| The Foreign Missionary Society | 500 00 |
| And the Freedmen's Aid Society | 500 00 |
| And the Home Missionary Society | 500 00 |

"Provided that the last two amounts be applied as directed by the regents of the U. S. Grant Memorial University. After which amounts shall be applied to the Rev. John Bean chair until the total contributed by donor shall reach $10,000. Provided further that all property of donor unspecified as otherwise applied as bequeathed shall be the property of Grant Memorial University, after decease of donor.

"J. J. Garvin, General Solicitor.
"Carolina C. B. Fruit, Donor."

After signing such paper Mrs. Fruit made a will in conformity thereto and conveyed real estate to such corporation

to the amount of $1,000, and gave a copy of the will and such paper to said Garvin for presentation to said corporation for its acceptance. At a meeting of the trustees of such corporation competent to act in the matter a resolution was adopted as follows:

"*Resolved,* that we hereby record our grateful acceptance of the 'Will' of Mrs. Carolina B. Fruit, secured and presented by Prof. J. J. Garvin, providing for the payment of ten thousand dollars to Grant Memorial University at the time of the decease of the donor and also for placing in the hands of said board $1,000 to be distributed by them as per said will.

"*Resolved,* that we hereby comply with the conditions of the aforesaid 'Will' by naming a chair in the theological department of said university to be known as the Rev. John Bean Chair or 'professorship.'

"*Resolved,* that we will have said name properly engraved on a marble tablet in said university and spread these resolutions on the journal of said institution, with the name of the donor."

At or about the time of such adoption and in effect as part of the said pretended acceptance of Mrs. Fruit's proposition referred to, an agreement was made between the corporation and said Garvin, worded as follows:

"This agreement made and entered into this 28th day of April, 1887, by and between the trustees of Grant Memorial University of the state of Tennessee, and J. J. Garvin, professor in the school of theology in said university, witnesseth: That the said J. J. Garvin is appointed and invested with full authority as financial agent and general solicitor of endowment funds for the said G. M. university.

"Said funds subscribed and collected are to be used for the endowment of a professorship in the school of theology in said university.

"It is further agreed that the said J. J. Garvin shall receive twenty (20) per cent. of all donations secured by him as commission. This commission may be taken from cash donations when collected. If the donation is in real estate

or other property, the said J. J. Garvin by agreement of all parties concerned as to values, may take his commission for cash donations secured by him; otherwise the said J. J. Garvin shall have one fifth interest in said property.

"In case the commission is taken in lands or other property the board of trustees shall deliver to said J. J. Garvin a deed for one fifth of said property or land; said one-fifth interest to be either divided or undivided as said Garvin shall desire.

"It is further agreed that all donations for permanent endowment secured by said J. J. Garvin shall be for the endowment of a chair or professorship in the school of theology in said university. And it is further agreed that said endowment shall remain intact, and only the interest or income be used to support said professorship.

"And it is further agreed that said J. J. Garvin shall hold said professorship and receive the income from said endowment as soon as it shall become available as his salary, as long as he may remain a professor in said university. It is further agreed by and between the aforesaid parties that the said J. J. Garvin shall be the agent of the board of trustees in the management of the endowment secured by him, and in selling or investing said funds he shall consult the board of trustees. It is further agreed that until the full amount of twenty-five thousand ($25,000.00) dollars has been raised, and the interest or income made available, the said J. J. Garvin may collect funds for his support to the amount of $1,500—including the income from endowment already secured."

The corporation, in passing the resolution aforesaid, did not purpose doing more than to formally name a chair or professorship in the university the "Rev. John Bean Chair," leaving the question of whether the professorship should be established for practical purposes in the institution to depend on success by said Garvin in accumulating the fund of $25,000 with which to endow the chair. Mrs. Fruit was never informed of the condition precedent to the Rev. John Bean chair being supplied by an occupant with active duties to perform in the said institution. Said Garvin never ob-

tained any substantial additions to the fund pledged by Mrs. Fruit, and hence there never has existed any such professorship in the institution conducted by said corporation as that called for by Mrs. Fruit's donation, except in name.

Shortly before her death Mrs. Fruit made a new will, in which, in the usual form, she revoked her former will. After her death said last will was duly established in the probate court for Sauk county, Wisconsin. Thereafter the *U. S. Grant University*, a corporation, and the successor of the U. S. Grant Memorial University, filed a claim against the estate of Mrs. Fruit for the amount of her donation aforesaid. Such proceedings were had respecting such claim that the judgment of the county court in the matter was carried for review to the circuit court for Sauk county, Wisconsin, where a trial was had, resulting in a decision, as to the facts, in accordance with the foregoing, specific findings being filed embodying the same, and other facts disclosed by the evidence, including the following: The name of the Grant Memorial University was changed to the *U. S. Grant University* subsequent to the adoption of the pretended acceptance of Mrs. Fruit's proposition to the corporation to establish a chair of practical theology in its institution, and its location was changed from Athens to Chattanooga, all without her knowledge or consent. The money provided by her for a scholarship was never devoted to that purpose. In accordance with the understanding between the corporation and said J. J. Garvin, he was permitted to retain the whole thereof and to appropriate twenty per cent. of it to his own use. Not only was no scholarship such as that called for by Mrs. Fruit's donation actually established in the university, but according to the rules and regulations of the corporation none can be established. By reason of the agreement between Garvin and the corporation whereby he was entitled to a portion of the donation secured from Mrs. Fruit upon the same being realized by the corporation, he is an interested party in this

cause.   No consideration was in fact paid or given by the corporation to Mrs. Fruit for her promised donation.

Upon such facts the court concluded, among other things, that there was practically an entire failure upon the part of the U. S. Grant Memorial University and its successor, the claimant, to accept and carry out the conditions of Mrs. Fruit's donation so as to make her promise in regard to the matter binding on her estate; that not only were the conditions of the donation never complied with, but the proceedings in regard to the matter were such as to indicate a determination never to comply therewith.   Upon that and numerous other legal conclusions specified by the trial court it was determined that the plaintiff had no cause of action, and its claim was accordingly dismissed with costs.   From the judgment entered in accordance with the decision of the court this appeal was taken.

For the appellant there were briefs by *Tenneys, Hall & Swansen,* attorneys, and *Sanborn & Sanborn,* of counsel, and oral argument by *A. L. Sanborn* and *S. T. Swansen.*

For the respondent there was a brief by *F. R. Bentley* and *Grotophorst, Evans & Thomas,* and oral argument by *Mr. Bentley* and *Mr. H. H. Thomas.*

MARSHALL, J.   It is considered that the judgment rendered in this case must be affirmed, if for no other reason, because the condition upon which Mrs. Fruit promised to endow a professorship in the U. S. Grant Memorial University has not been complied with.   The sole consideration contemplated for such promise was performance by the corporation of such condition.   Total failure on its part respecting such performance leaves such promise without any consideration to support it.   A careful reading of the evidence found in the record, after giving due weight to that which the court rejected—waiving for that purpose the question of whether the ruling in respect to such evidence was proper or not—fails to

satisfy us that the findings of fact, to the effect that the donee
never accepted Mrs. Fruit's promise to endow a chair of prac-
tical theology in its university by an unconditional executed
promise to establish such chair as the donor understood
was to be done as a condition precedent to her being bound
by her promise, are contrary to the clear preponderance of
the evidence. We must give to the language of the writing
which Mrs. Fruit signed and transmitted to the donee a rea-
sonable construction. The words "said chair to be named
. . . at once on condition," etc., were doubtless intended
to require more than merely going through the empty cere-
mony of giving the name "Rev. John Bean" to a professor-
ship. The idea in the mind of Mrs. Fruit in all reasonable
probability was that her promised donation should secure
either the immediate naming of a chair or professorship al-
ready existing, or the establishment of a professorship at
once and naming the same, filled or to be filled by a person
having active duties of an educational character to perform
in the donee's college of theology. If Garvin, who obtained
Mrs. Fruit's promise, was at the time thereof acting in good
faith, he must have been of the same mind. The idea can-
not be seriously indulged in that the parties to the transac-
tion contemplated that Mrs. Fruit was to donate $10,000 to
the corporation for the empty honor of having a vacant pro-
fessorship in the theological school called the "Rev. John
Bean" chair, or to have her promised bounty remain useless
as regards practical work in the university till the donee
should be able to accumulate a fund by additional donations
large enough, in its judgment, to compensate a person for oc-
cupying the chair and performing the duties incident thereto ;
much less that one fifth of the money contributed by her was
to be diverted to the private use of Garvin. There does not
seem to be any reasonable construction of the words "said
chair to be named . . . at once on condition," etc., other
than that they at least called for the performance by the

donee of such acts as would speedily establish in the donee's college of theology an active professorship called the "Reverend John Bean" chair. That was not done. It is evident that the donee, either in good faith or bad faith, acted upon the theory that the condition of Mrs. Fruit's promise required it only to confer the name "Rev. John Bean" on a professorship in the theological department in the university, regardless of whether the chair should ever be established for any practical purpose or not; that it was competent for the corporation to use the endowment fund in any way it might see fit, so long as the empty honor was bestowed of naming a professorship the "Rev. John Bean Chair," regardless of whether it was then or ever should be established for practical purposes. Mrs. Fruit's scheme seems unmistakable. The view that it contemplated the mere empty honor of the naming of an empty chair to remain unoccupied is so absurd that we must conclude that she never intended to donate $10,000 or any other sum for any such purpose, and that if her donee acted upon the assumption that she did, it did not act in good faith. As we look at the matter the donee has wholly failed to comply with the condition affixed by Mrs. Fruit to her promise, and hence that such promise never ripened into a binding contract.

*By the Court.*—The judgment is affirmed.